UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KEVIN JAMES LISLE,

Petitioner,

v.

TIMOTHY FILSON, *et al.*,

Respondents.

Case No. 2:03-cv-01005-JCM-CWH

**ORDER**

## I.    Introduction

Before the Court, in this capital habeas corpus action, are a motion to dismiss filed by respondents, and a motion for leave to conduct discovery, motion for medical examination and site inspection, and motion for evidentiary hearing filed by the petitioner. The Court will grant the motion to dismiss in part and deny it in part, and will deny the petitioner's motions.

## II.    Background

This action is brought pursuant to 28 U.S.C. § 2254, by Kevin James Lisle, a Nevada prisoner sentenced to death. Lisle's conviction and death sentence, at issue in this case, are for the murder of Kip Logan in Las Vegas on October 22, 1994. In its opinion on Lisle's direct appeal, the Nevada Supreme Court described the factual background of the case as follows:

> On the evening of October 22, 1994, Joey Gonzales and Kip Logan
> bought two beers and then headed towards Logan's girlfriend's house. As

1

Logan drove on U.S. Interstate Highway 95, a white van approached his Mustang. Gonzales observed the van's front passenger stick his head and arm out of the window and scream at them. Gonzales told Logan, "Let's just go," and took a swig of his beer. At that moment, Gonzales heard the driver-side window break. He turned and saw Logan slumped over the steering wheel. Gonzales grabbed the steering wheel and stopped the Mustang.

Metro police officer Steve Borden and his partner, Mike Carreia, arrived as Gonzales was pulling Logan out of the Mustang. Officer Borden saw that Logan had been shot in the head. He checked Logan for vital signs, and saw none.

Gonzales told Borden that he saw three males in an Aerostar-type van, Hispanic or white, with shaved heads. Gonzales said that the shooter had a goatee, and that the back-seat passenger appeared more white.

On the next day, a medical examiner determined that Logan had died of a gunshot wound to his head. Fragments of a bullet consistent with a .357 Magnum were removed from Logan's head.

On the same day, John Melcher was arrested. He denied being in the van on the previous night.

On October 27, 1994, Anthony Evans was arrested. That evening, he gave a statement that Melcher was in the front passenger seat of the van, and that the shot came from the front passenger side. He said that after the shooting, "Shotgun" (Melcher) disposed of the gun.

On October 31, 1994, the defendant, Kevin James Lisle, was arrested.

On April 6, 1995, Evans agreed to testify against Lisle and Melcher in exchange for the State reducing his charges to accessory after the fact of murder. Evans agreed to testify both in the Logan case and in another homicide case involving Lisle ("the Lusch case"). On May 23, 1995, Evans was released from custody.

Sometime after Evans agreed to cooperate with the State, Melcher sought the same deal. On July 24, 1995, he was interviewed by detectives. His charges were later reduced to accessory after the fact of murder. His case was transferred to juvenile court and he received probation.

On October 9, 1995, an amended indictment was filed charging Lisle with one count of murder with use of a deadly weapon and one count of attempted murder with use of a deadly weapon. A jury trial commenced on October 16, 1995.

Guilt phase

At trial, Evans testified that on the night of October 22, 1994, he, Melcher, and Lisle were at Larry Prince's apartment. Evans, Melcher, and Lisle decided to borrow a white van from Prince, and Melcher picked up the keys to the van. As Lisle got into the front passenger seat of the van he said, "I hope nobody messes with us tonight, because I'm drunk and I do crazy things when I'm drunk." Lisle was holding a .357 handgun.

Evans testified that Melcher drove the van, Lisle was in the front passenger seat, and he was in the rear passenger seat. Lisle was hanging out the window and throwing gang signs at cars. Evans heard Lisle tell Melcher, "speed up," and the van pulled up to a Mustang. Evans observed Lisle pull out his gun and point it out of the window, and then Evans heard a gunshot and saw sparks fly. Evans then saw the Mustang pull over to the side of the road, saw that the Mustang's driver-side window was shattered, and saw the driver laying against the steering wheel. Evans stated that he did not know whether there was anyone else in the Mustang besides the driver. Evans testified that after the gunshot, Lisle directed Melcher to get off the freeway and to stop the van. Lisle then disposed of the gun.

On redirect, Evans testified that he was a member of the North Hollywood Boyz, and Lisle was a member of the Westside Lompoc, both California gangs. He stated that he had known Lisle for two years and Melcher for two months. He stated that Melcher was not a gang member. Evans said that gang members have a rule "not to tell on none of your friends." He testified that he was afraid of Lisle.

Prince testified that while living in Las Vegas, he became familiar with Evans, Melcher and Lisle. He stated that he had rented a van for their use, and that Lisle drove it more than anyone else. Prince admitted that he testified in this case pursuant to a plea bargain on a drug possession charge.

The grand jury testimony of Tom Foster was read. On the night of the shooting, Foster observed three males exit from a white van. Foster testified that he was positive that Lisle was the driver of the van. Foster identified Melcher as a passenger.

Detective Diane Falvey testified that on the day of Evans' arrest he had indicated that Melcher was the shooter, but she suspected he was not giving the right information. Detective Donald Tremel testified that when Melcher was arrested, Melcher told him that Lisle was driving the van.

Melcher testified that he had no gang affiliation. He stated that he did things for Lisle, such as "drive the car around," in exchange for clothes and money. Melcher stated that on the evening of October 22, 1994, he was driving the white van on the freeway.

Melcher testified that while he was in custody, he saw Lisle at the detention center. Lisle told him "that he looked Logan in the eye before he killed him and he enjoys it and that after I do my first one I will see what he is talking about." Lisle also told him that the police believed Melcher was the shooter, and told him to take the blame for the shooting. Melcher stated that he was aware of the gang code of conduct, "if you snitch, you die," and that he had been afraid of retaliation.

Melcher also testified that he could not grow a beard.

Sophia Martinez testified that at approximately 3:00 a.m. on October 23, 1994, Lisle told her that he had done something crazy, and to watch the news. At that time, Lisle had a mustache but no hair on his chin. She had never seen Melcher with a mustache or a goatee. She saw Lisle with a shaved face later that day.

Christopher Barnes, testifying for the defense, stated that after hearing about the shooting he contacted the police, because he had been assaulted by individuals of a similar description. He identified a photograph of Melcher as one of his assailants. However, he acknowledged that although he had believed his assailant had lighter skin than himself, Melcher's skin was darker than his. He was shown a photo of Lisle but did not recognize him as having been involved in the incident. He described his assailant as having "a little bit of rough around the chin and the moustache," what he would call a goatee.

David Hermanson, Melcher's cellmate, stated that Melcher had admitted to him that he was trying to shoot the passenger but missed and hit the driver.

On October 20, 1995, the jury returned a verdict of guilty for both the murder and the attempted murder charges.

Penalty phase

On October 24, 1995, the State filed its intent to seek the death penalty based on the aggravating circumstance that the murder was committed by a person who knowingly created a risk of death to more than one person by means of a weapon, device, or course of action that would normally be hazardous to the lives of more than one person. The district court granted Lisle's motion for a mistrial on attempted murder, but denied a motion for mistrial for the murder charge.

During the penalty phase, several witnesses implicated Lisle in the Lusch case.

4

On October 26, 1995, the jury returned a sentence of death. On February 1, 1996, the judgment of conviction and a warrant of execution were filed.

*Lisle v. State*, 113 Nev. 540, 544-47, 937 P.2d 473, 475-77 (1997) (order filed as Exhibit 73 (ECF No. 219-12)).

In a separate case pending in this Court, Case No. 2:03-cv-1006-MMD-CWH, Lisle seeks relief with respect to his conviction and death sentence for the Lusch murder.

In this case, regarding the Logan murder, the judgment of conviction was entered on February 1, 1996. *See* Judgment of Conviction, Exhibit 67 (ECF No. 219-6). Lisle appealed to the Nevada Supreme Court, and the Nevada Supreme Court affirmed on April 24, 1997. *See* Appellant's Amended Opening Brief, Exhibit 70 (ECF No. 219-9); *see also Lisle*, 113 Nev. 540, 937 P.2d 473. The Nevada Supreme Court denied Lisle's petition for rehearing, but issued an order clarifying its ruling on one issue. *See* Order Denying Rehearing, Exhibit 75 (ECF No. 219-14); *Lisle v. State*, 114 Nev. 221, 954 P.2d 744 (1998). Lisle petitioned to the United States Supreme Court for certiorari; the petition was denied on October 5, 1998. *See* Opinion, Exhibit 76 (ECF No. 219-15); *Lisle v. State*, 525 U.S. 840 (1998). The Nevada Supreme Court's remittitur was issued on November 16, 1998. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 91, p. 2 (ECF No. 220, p. 3).

Lisle filed a *pro se* petition for writ of habeas corpus in the state district court on November 9, 1998. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 78 (ECF No. 219-17). Counsel was appointed, and, with counsel, Lisle filed a supplement to his petition on July 26, 2000. *See* Supplemental Points and Authorities, Exhibit 84 (ECF No. 219-23). The state district court denied the petition on October 30, 2000. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 91 (ECF No. 220). Lisle appealed, and the Nevada Supreme Court affirmed the denial of the petition on August 21, 2002. *See* Appellant's Opening Brief, Exhibit 99 (ECF No. 220-8); Order of Affirmance, Exhibit 103

(ECF No. 220-12). The remittitur was issued on September 17, 2002. *See* Remittitur, Exhibit 105 (ECF No. 220-14).

Lisle initiated this action by filing a petition for writ of habeas corpus in this Court on August 20, 2003 (ECF No. 1). Lisle's original petition in this case was signed on his behalf by counsel. However, Lisle requested appointment of counsel by the Court, and the Court appointed the Federal Public Defender for the District of Nevada (FPD) to represent him (ECF Nos. 2, 4, 6). Lisle then filed a motion for leave to conduct discovery (ECF No. 41), and extensive discovery proceedings ensued.

On April 15, 2008, Lisle filed a first amended habeas petition (ECF No. 122).

On June 2, 2008, Lisle filed a motion for leave to file a second amended petition, and he submitted the proposed second amended petition (ECF No. 128). That motion was granted on July 8, 2008, and the second amended petition was filed on that date (ECF Nos. 131, 132).

On April 15, 2008, along with his first amended petition, Lisle filed a motion for stay and abeyance (ECF No. 120). Respondents did not oppose that motion, and on July 8, 2008, the case was stayed pending exhaustion of claims in state court (ECF No. 131).

On August 25, 2008, Lisle filed a second state-court habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 108 (ECF Nos. 220-17, 220-18); *see also* Amended Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 121 (ECF Nos. 221-2, 221-3, 221-4); Second Amended Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 136 (ECF Nos. 221-26, 221-27, 221-28). The state district court dismissed that petition on procedural grounds on November 20, 2009. *See* Findings of Fact, Conclusions of Law and Order, Exhibit 140 (ECF No. 221-32). Lisle appealed, and the Nevada Supreme Court affirmed on June 25, 2015. *See* Order, Exhibit 169 (ECF No. 222-23); *Lisle v. State*, 351 P.3d 725 (Nev. 2015). The Nevada Supreme Court denied rehearing on October 22, 2015. *See* Order Denying Rehearing, Exhibit 173 (ECF No. 222-27). The United States Supreme Court denied certiorari on May 16, 2016. *See* Letter, Exhibit 179 (ECF No. 222-33).

The stay of this case was lifted, upon a motion by Lisle, on June 22, 2016 (ECF No. 191). On October 21, 2016, Lisle filed a third amended petition for writ of habeas corpus (ECF No. 197), which is now his operative petition in this case. The Court reads Lisle's third amended petition to assert the following discrete claims:

1. Lisle's conviction and death sentence violate the federal constitution "because, in light of new evidence not presented at trial, it is more likely than not that no reasonable juror, properly instructed, would have found him guilty beyond a reasonable doubt ... and/or he can make a truly persuasive demonstration that he is factually innocent of the offense." Third Amended Petition (ECF No. 197), pp. 14-34.

2. Lisle's conviction and death sentence violate the federal constitution "because prosecutorial misconduct and the State's failure to disclose material exculpatory and impeachment evidence deprived Mr. Lisle of fundamentally fair proceedings." *Id.* at 35.

> A. "The State failed to disclose material impeachment evidence and failed to correct false testimony." *Id.*

>> 1. "The State failed to disclose exculpatory and impeachment materials regarding John Melcher." *Id.* at 36-44.

>> 2. "The State failed to disclose impeachment materials regarding Larry Prince." *Id.* at 44-49.

>> 3. "The State failed to disclose impeachment evidence regarding Adam Evans." *Id.* at 49-50.

>> 4. "The State failed to disclose the existence of cash payments to its witnesses." *Id.* at 50-53.

>> 5. "The prosecutor misled trial counsel by claiming that his office maintained an open file policy." *Id.* at 54-56.

> B. "The State committed misconduct throughout the trial." *Id.* at 56.

>> 1. "The State made improper comments and argument during its opening statement." *Id.* at 57-58.

>> 2. "The State committed misconduct during its closing argument." *Id.* at 58.

a. "The State improperly aligned itself with the jury." *Id.* at 58-59.

b. "The State improperly vouched for the credibility of Mr. Evans and Mr. Melcher." *Id.* at 59-62.

c. "Improperly commenting upon the lack of mitigating evidence and the role of mitigating circumstances." *Id.* at 62-63.

3. Lisle's conviction and death sentence violate the federal constitution "because the State committed prosecutorial misconduct in presenting testimony that improperly bolstered its witnesses; the trial court erred in failing to strike that testimony; and trial counsel provided ineffective assistance in failing to object to that testimony, move to strike that testimony, and move for a mistrial following the jury's exposure to that testimony." *Id.* at 65-77.

4. Lisle's conviction and death sentence violate the federal constitution "because the prosecutor prevented the defense from speaking with John Melcher and the trial court did not afford petitioner a hearing on his allegations." *Id.* at 78-82.

5. Lisle's conviction and death sentence violate the federal constitution "because Mr. Lisle's attorneys were constitutionally ineffective at all stages of his state-court proceedings." *Id.* at 83.

A. "Trial counsel were ineffective for failing to present available mitigating evidence at the penalty phase." *Id.* at 83-129.

B. "Trial counsel performed ineffectively during the guilt phase." *Id.* at 129.

1. "Failure to investigate and present evidence of actual innocence of first-degree murder." *Id.* at 129-32.

2. "Ineffective litigation of gang allegations in the guilt phase." *Id.* at 132-42.

3. "Ineffective cross-examination of Larry Prince." *Id.* at 142-55.

4. "Ineffective cross-examination of John Melcher." *Id.* at 155-57.

5. "The institutional lack of resources at the office of the Clark County Public Defender." *Id.* at 158-59.

8

C.　"Trial counsel failed to object to prosecutorial misconduct." *Id.* at 159-60.

D.　"Trial counsel failed to object to erroneous jury instructions and failed to request necessary jury instructions." *Id.* at 160-61.

6.　Lisle's conviction and death sentence violate the federal constitution "due to the invalid instructions defining first-degree murder which removed the distinguishing elements of the offense from the jury's consideration and rendered the instructions unconstitutionally vague." *Id.* at 163-73.

7.　Lisle's death sentence violates the federal constitution "because the knowing risk of death aggravating circumstance has been unconstitutionally applied to Mr. Lisle's case." *Id.* at 174-80.

8.　Lisle's conviction and death sentence violate the federal constitution "because cumulative errors in Mr. Lisle's proceedings deprived him of fundamental fairness throughout the proceedings." *Id.* at 181-82.

9.　Lisle's conviction and death sentence violate the federal constitution "due to direct appeal counsel's failure to provide reasonably effective assistance." *Id.* at 183-87.

10.　Lisle's conviction and death sentence violate the federal constitution "because the trial court committed numerous substantial and injurious errors during the guilt- and penalty-phase proceedings." *Id.* at 188.

A.　"The trial court erroneously allowed the State to present prejudicial evidence of an unadjudicated homicide." *Id.* at 188-90.

B.　"The trial court erroneously admitted hearsay evidence in violation of Lisle's confrontation rights." *Id.* at 190-95.

C.　"The trial court erred by failing to continue Mr. Lisle's arraignment despite the fact that he had not been given a timely copy of the grand jury proceedings." *Id.* at 195-96.

D.　"The State failed to provide Mr. Lisle with adequate notice of the grand jury proceedings." *Id.* at 197-201.

11.　Lisle's conviction and death sentence violate the federal constitution "because the trial court erroneously instructed the jury in the guilt- and penalty-phase proceedings." *Id.* at 202.

A.　"The reasonable doubt instruction." *Id.* at 202-04.

B.　"Guilt phase instructions." *Id.* at 204.

1.　"The premeditation and deliberation instruction." *Id.* at 204.

2.　"The malice instructions." *Id.* at 204-07.

9

C. "Penalty phase instructions." *Id.* at 207.

    1. "The anti-sympathy instruction." *Id.* at 207-08.

    2. "The limited use of prior bad act evidence and failure to instruct the jury that the other murder offense had to be found beyond a reasonable doubt." *Id.* at 208-12.

    3. "The failure to require that mitigation evidence must be outweighed by statutory aggravating circumstances beyond a reasonable doubt." *Id.* at 212-13.

12. Lisle's conviction and death sentence violate the federal constitution "because systemic errors in jury selection infected the voir dire proceedings." *Id.* at 214.

A. "The State used peremptory challenges in a racially discriminatory manner." *Id.* at 215-21.

B. "The trial court failed to remove for cause biased jurors Koch, Mode, and Chandler from the venire." *Id.* at 221-22.

C. "The trial court improperly limited the voir dire proceedings." *Id.* at 223-25.

D. "The trial court erred by limiting voir dire to questions not contained in the written questionnaires in order to rush the voir dire proceedings." *Id.* at 225-27.

E. "The trial court erred in conducting voir dire on the unconstitutional theory that a prospective juror had to be able to 'equally consider' death as a punishment." *Id.* at 227-29.

F. "The trial court failed to record critical parts of voir dire." *Id.* at 230-31.

G. "Mr. Lisle was deprived of the effective assistance of counsel during the voir dire proceedings." *Id.* at 231-32.

    1. "Trial counsel failed to rehabilitate death-scrupled jurors." *Id.* at 232-35.

    2. "Trial counsel failed to object for cause to biased jurors." *Id.* at 235-38.

    3. "Trial counsel were ineffective for using peremptory strikes to remove biased jurors who should have been challenged for cause." *Id.* at 238-40.

    4. "Trial counsel ineffectively litigated the *Batson* issue." *Id.* at 240-41.

> 5. "Trial counsel were ineffective in failing to object to the misleading voir dire and question on the questionnaire regarding 'equal consideration" of the death penalty." *Id.* at 241.

13. Lisle's conviction and death sentence violate the federal constitution "due to the failure of the Nevada Supreme Court to conduct fair and adequate appellate review." *Id.* at 243.

> A. "The Nevada Supreme Court's mandatory review of death sentences for arbitrariness is itself arbitrary and capricious." *Id.* at 243-46.

> B. "The Nevada Supreme Court's appellate review in Lisle's case was arbitrary and capricious." *Id.* at 246-50.

14. Lisle's conviction and death sentence violate the federal constitution "because severe mental illness rendered Mr. Lisle incompetent to stand trial." *Id.* at 251-60.

15. Lisle's conviction and death sentence violate the federal constitution "because he may become incompetent to be executed." *Id.* at 261.

16. Lisle's conviction and death sentence violate the federal constitution "because severe mental and physical illness rendered him incompetent" during his proceedings, and "Lisle's maltreatment while incarcerated results in his execution being unconstitutional." *Id.* at 262-84.

17. Lisle's conviction and death sentence violate the federal constitution "because Mr. Lisle was forced to wear a stun belt and shackles during the guilt and penalty phases of his trial." *Id.* at 285-87.

18. Lisle's federal constitutional rights were violated "because Mr. Lisle's capital trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election." *Id.* at 288.

> A. "The system of electing judges in the State of Nevada carries an unconstitutional risk of bias. *Id.* at 288-96.

> B. "The actions of the trial court in Lisle's case demonstrate an unconstitutional risk of judicial bias." *Id.* at 296-300.

19. Lisle's federal constitutional rights were violated "because Mr. Lisle's attorneys failed to object to the admission of evidence during the penalty phase of his trial which recounted events that did not result in a criminal conviction and that occurred before Mr. Lisle reached the age of eighteen." *Id.* at 301-04.

20. Lisle's death sentence is invalid under the federal constitution "because the Nevada capital punishment system operates in an arbitrary and capricious manner." *Id.* at 305-08.

21. Lisle's death sentence is invalid under the federal constitution "because his execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments and his rights under the First and Fourteenth Amendments." *Id.* at 309.

    A. "Lethal injection is unconstitutional in all circumstances." *Id.* at 309-18.

    B. "Lethal injection in Nevada is unconstitutional." *Id.* at 318-28.

On March 20, 2017, respondents filed their motion to dismiss Lisle's third amended petition (ECF No. 216). Lisle filed an opposition to that motion on August 11, 2017 (ECF No. 232). Lisle also filed a motion for leave to conduct discovery (ECF No. 236), a motion for medical examination and site inspection (ECF No. 241), and a motion for evidentiary hearing (ECF No. 239).

On August 14, 2017, Lisle's counsel – the FPD – filed an ex parte motion to withdraw or for appointment of separate counsel (ECF No. 243 (sealed)), informing the court that they had a conflict with respect to a potential argument for equitable tolling in response to respondents' assertion of the statute of limitations defense. The Court denied the FPD's motion to withdraw, but appointed separate counsel to assert the equitable tolling argument for Lisle (ECF Nos. 246, 247 (sealed)). Lisle's separate counsel filed a memorandum of supplemental argument in response to the motion to dismiss (ECF No. 252).

On December 11, 2017, respondents filed a reply to Lisle's opposition to the motion to dismiss (ECF No. 253), and oppositions to Lisle's three motions (ECF Nos. 254, 255, 256). On October 30, 2017, Lisle filed replies in support of his motions (ECF Nos. 257, 258, 259).

///

///

///

///

///

## III. Discussion

### A. Statute of Limitations

#### 1. Legal Standards

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions or sentences; the statue provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1).

The AEDPA statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2).

A habeas petitioner is entitled to equitable tolling of the AEDPA statute of limitations if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

### 2. Expiration of the Limitations Period

Lisle's conviction became final on October 5, 1998, when the United States Supreme Court denied his petition for certiorari. *See Rhines v. Weber*, 544 U.S. 269, 272 (2005).

Lisle filed his first state-court petition for writ of habeas corpus 38 days later, on November 12, 1998, tolling the AEDPA limitations period under 28 U.S.C. § 2244(d)(2). Absent any applicable equitable tolling, that 38 days ran against the one-year limitations period.

Lisle's first state habeas action was completed, and the statutory tolling relative to that action ceased, when the Nevada Supreme Court issued its remittitur, after affirming the denial of Lisle's petition, on September 17, 2002.

It was then 337 days later when Lisle mailed his federal habeas petition to this Court for filing, on August 20, 2003. *See* Petition for Writ of Habeas Corpus (ECF No. 1). That 337 days also ran against the one-year limitations period, unless equitable tolling is warranted during that period.

Therefore, absent equitable tolling, a total of 375 days ran against the one-year AEDPA limitations period before Lisle filed his original habeas petition in this action. Without equitable tolling, then, Lisle's original habeas petition was filed 10 days late, and would be barred by the statute of limitations.

Beyond that, Lisle's first amended petition was filed more than four and a half years later, on April 15, 2008. *See* First Amended Petition (ECF No. 122). Lisle submitted his second amended petition for filing about a month and a half after that, on June 2, 2008 (ECF No. 128). And it was almost eight and a half years later, on October 21, 2016, when Lisle filed his third amended petition (ECF No. 197).

### 3. Lisle's Waiver Argument

Lisle argues that respondents waived the statute of limitations defense because they did not raise it until they filed their motion to dismiss Lisle's third amended petition on March 20, 2017. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 11-20.

Specifically, Lisle argues that, under Federal Rule of Civil Procedure 12(g)(2), respondents waived the argument that his original petition was untimely by not asserting it in a motion to dismiss Lisle's original petition, which motion was filed on October 4, 2004 (ECF No. 43). *See id.* The Court need not reach this issue, and declines to do so, as the Court determines that Lisle's original petition was timely filed as a result of equitable tolling. *See* discussion, below, part III.A.5.

### 4. Lisle's Argument that He Can Overcome the Statute of Limitations Defense Because He Is Actually Innocent

Citing *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013), Lisle argues that the statute of limitations bar should be excused because he is actually innocent of the murder. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 1-11.

A habeas petitioner can overcome a procedural default or a statute of limitations bar, allowing consideration of the merits of otherwise barred claims, by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 324-29 (1995); *see also McQuiggin*, 569 U.S. at 399. To demonstrate actual innocence to overcome a procedural bar under *Schlup*, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. By means of that evidence, and in light of all the evidence in the case, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also id.* at 329 ("a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"); *House v. Bell*, 547 U.S. 518, 538, quoting *Schlup*, 513 U.S. at 327-28 (regarding evidence to be considered). "Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538, quoting *Schlup*, 513 U.S. at 329. "The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the

15

likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error," warranting "a review of the merits of the constitutional claims[.]" *Schlup*, 513 U.S. at 317. "[T]he miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *See Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

Lisle argues that he can show his innocence by means of new evidence that would impeach the trial testimony of certain prosecution witnesses.

An important question of fact at Lisle's trial was who sat in the front passenger seat of the van and fired the shot that killed Logan. Prosecution witnesses whose testimony incriminated Lisle – including Evans and Melcher, who were present when Logan was killed – had made prior statements inconsistent with their trial testimony. Also, prosecution witnesses had received plea agreements regarding their own criminal cases. This information was known by Lisle's attorneys at the time of trial, was presented to the jury, and was part of the case considered by the jury. Lisle's actual innocence argument, in large part, simply reiterates the evidence favorable to him at trial regarding the veracity, or lack thereof, of the prosecution witnesses who identified him as the shooter. *See, e.g.,* Third Amended Petition (ECF No. 197), pp. 14-27; Opposition to Motion to Dismiss (ECF No. 232), pp. 3-8.

Additionally, though, Lisle proffers new evidence – meaning, here, evidence not introduced at trial – that he argues undermines the trial testimony of the prosecution's witnesses. He proffers evidence tending to show that Melcher may have had facial hair at the time of an incident (the "Barnes assault") that occurred some one and a half weeks before the Logan murder, and perhaps also at the time of the Logan murder; this evidence, Lisle argues, could tend to show that Melcher could have been the person who shot Logan, the shooter having been described as having facial hair. *See* Third Amended

16

Petition (ECF No. 197), pp. 27-33, 38-41; Opposition to Motion to Dismiss (ECF No. 232), pp. 8-9. Lisle also proffers new evidence tending to indicate that Melcher was affiliated with a gang, contrary to testimony at trial. *See* Third Amended Petition (ECF No. 197), pp. 36-37. Also, Lisle proffers new evidence indicating that Melcher, Evans and Prince, and other prosecution witnesses, received benefits for their testimony vis-à-vis their own criminal cases, and also in the form of excessive witness fees, that were not disclosed at trial. *See id.* at 28, 41-53; Opposition to Motion to Dismiss (ECF No. 232), pp. 7-8, 10-11. The Court determines that Lisle does not present the sort of new evidence of innocence contemplated by *Schlup* and *McQuiggin.* That is, Lisle's new evidence, providing only "a basis for some degree of impeachment of the prosecution's main witnesses ... does not ... fundamentally call into question the reliability of [the] conviction." *Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002) (en banc). At trial, the veracity of the prosecution witnesses was contested. The jury heard evidence indicating that prosecution witnesses were associates of Lisle, involved in criminal activity, and that they had not been consistent with respect to their stories concerning the Logan murder. The new evidence presented by Lisle, while adding marginally to the impeachment of those witnesses, and while adding some weight to the theory that Melcher could have been the shooter, does not at all rule out the possibility that Lisle was the shooter. None of the new evidence tends to prove that Lisle is factually innocent. The new evidence is not such as to make it more likely than not that no reasonable juror would have found Lisle guilty beyond a reasonable doubt had they seen this evidence.

In addition, Lisle now proffers declarations of FPD personnel stating that they received information from Evans and Melcher recanting certain aspects of their trial testimony and, to some extent, perhaps, tending to exculpate Lisle. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 6, 9; Statement of Tammy R. Smith, Exhibit 294 (ECF No. 210-12) (stating that Evans's brother told Smith, an FPD investigator, that Evans told him that he provided to Melcher the gun used to kill Logan); Declaration of Albert L. Sieber, Exhibit 324 (ECF No. 234-7) (stating that Melcher said, over the

telephone, that Lisle never admitted to him that he killed Logan or Lusch); Declaration of Nicole VanToorn, Exhibit 325 (ECF No. 234-8) (stating that Melcher said, over the telephone, that Lisle never admitted to him that he killed Logan or Lusch). The Court views this evidence as suspect. These amount to hearsay statements about alleged recantations by criminal associates of the petitioner, more than fifteen years after their trial testimony. *See Jones v. Taylor*, 763 F.3d 1242, 1246-51 (9th Cir. 2014) (discussing suspect nature of witness recantations, concluding that even a victim's recantation was insufficient to establish actual innocence, and reversing judgment granting relief on actual innocence claim); *see also Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984) ("Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."). As such, this evidence is of limited weight in this Court's view. It does not approach the standard set in *McQuiggin* and *Schlup*, to overcome the statute of limitations. It does not establish that it is more likely than not that no reasonable juror would have convicted Lisle in light of the new evidence.

This is not the sort of "extraordinary" case in which *Schlup* and *McQuiggin* permit review of claims despite a statute of limitations or procedural default bar.

Lisle requests leave to conduct discovery and an evidentiary hearing with respect to his claim of actual innocence under *Schlup* and *McQuiggin*. *See* Motion for Leave to Conduct Discovery (ECF No. 236), pp. 5-7; Motion for Evidentiary Hearing (ECF No. 239), pp. 4-5. The Court finds discovery and an evidentiary hearing with respect to this issue to be unwarranted. Lisle falls short of making the required showing to overcome the statute of limitations and procedural default bars of his claims.

///

///

///

///

**5.    Equitable Tolling from the Completion of Lisle's First State Habeas Action to the Appointment of Counsel in His Federal Habeas Action**

Lisle argues, and he points to evidence supporting his argument, that equitable tolling is warranted because of conditions of his confinement at Ely State Prison (ESP), because of physical and mental health problems, and because he was abandoned by his counsel. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 24-80; *see also* Supplement to Petitioner's Opposition to Motion to Dismiss (ECF No. 252). The Court finds this argument to be meritorious, and will grant such equitable tolling, from the completion of Lisle's first state habeas action to the appointment of counsel in this action.

Lisle makes a compelling showing that, following the completion of his first state habeas action, and until the time that counsel was appointed for him in this federal habeas action, he suffered from mental illness, he suffered from physical illness, he was imprisoned under unusually restrictive conditions, and he was essentially abandoned by his counsel with respect to the initiation and litigation of his federal habeas action. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 24-80; *see also* Supplement to Petitioner's Opposition to Motion to Dismiss (ECF No. 252). Taken together, the Court determines that these circumstances were extraordinary, and were such as to prevent Lisle from complying with the AEDPA statute of limitations in initiating this action. *See Holland*, 560 U.S. at 649 (regarding standard for equitable tolling); *Ramirez*, 571 F.3d at 997 (same).

The material presented by Lisle in opposition to the motion to dismiss shows that, during the time at issue here, Lisle suffered from significant physical and mental health issues. *See* Opposition to Motion to Dismiss, pp. 15-40. Furthermore, during this time he was incarcerated in extremely restricted solitary confinement at Ely State Prison. *See Id.* In this Court's view, Lisle could not have been expected, under these circumstances, to timely initiate this action.

Furthermore, during the time in question, despite Lisle's inability to initiate a federal habeas action on his own behalf, the attorneys who represented Lisle in his first state

habeas action abandoned him, and an attorney at the FPD's office, who had represented Lisle previously, offered no help. Soon after Lisle's state habeas case was completed, his state habeas counsel informed him of that, and indicated that a federal action would be the next step; however, Lisle's state habeas counsel did not instruct Lisle what he needed to do to initiate a federal action, and did not make clear to Lisle that they no longer would represent him. Then, despite the uncertainty whether or not Lisle was still represented by this state habeas counsel, his state habeas counsel ultimately signed Lisle's skeletal original federal petition, which was filed for him in an untimely manner. Meanwhile, during the time in question, before the AEDPA limitations period ran out, Lisle wrote to an attorney who had represented him at trial and who was then at the office of the FPD's office, seeking help, but received no assistance from her. *See* Supplement to Petitioner's Opposition to Motion to Dismiss (ECF No. 252).

The Court finds that these were extraordinary circumstances, and they prevented Lisle from initiating this action in a timely manner. The Court will grant Lisle equitable tolling from September 17, 2002, the date on which his first state habeas action was completed, to October 15, 2003, the date on which the FPD was appointed to represent Lisle in this action.

This is not to say that the Court would necessarily find any one of the factors affecting Lisle – his mental illness, his physical illness, the conditions of his confinement, the actions of his state habeas counsel and the FPD – as sufficient, in itself, to warrant equitable tolling. However, taking these factors together, the Court concludes that equitable tolling is warranted for this period of time.

**6.  Equitable Tolling from the Appointment of Counsel in This Action to the Date of the Supreme Court's Decision in Mayle**

Next, the Court determines that equitable tolling is warranted from when counsel was appointed for him, on October 15, 2003, until June 23, 2005, the date of the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005).

Lisle's original habeas petition in this case was filed on August 20, 2003 (ECF No. 1). In that petition, filed on a court form, in the section where the petitioner was to state his first ground for relief, Lisle's petition stated only: "See attached pleadings. Exs. 3, 4." *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3. Exhibits 3 and 4, attached to the petition, were copies of Lisle's opening brief and reply brief on the appeal in his first state habeas action. Lisle's original petition, then, was skeletal, raising – as this Court reads it – only the same claims that he raised on the appeal in his first state habeas action.

Then, as Lisle points out (*see* Opposition to Motion to Dismiss (ECF No. 232), pp. 104-27), after counsel was appointed for him, the Court's scheduling orders set deadlines related to discovery proceedings and for Lisle to file an amended petition. Lisle argues that he relied on the scheduling orders in determining when to file his amended petition, and he was, thereby, lulled into filing his amended petition nearly five years after he filed his initial petition. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 104-27. Instructions from a court do not serve as a basis for equitable tolling unless the court "affirmatively misled" the petitioner. *Ford v. Pliler*, 590 F.3d 782, 786-87 (9th Cir. 2009). The Court did not affirmatively mislead Lisle. As Lisle acknowledges, the Court's scheduling orders were based on procedures in capital cases that were developed before the AEDPA statute of limitations was enacted. *See* Opposition to Motion to Dismiss (ECF No. 232), p. 59 (recognizing that the procedures were adopted in 1992). The scheduling orders made no mention of the statute of limitations, and did not indicate that they were meant to affect the application of the statute of limitations in any manner. The scheduling orders granted leave for Lisle to conduct discovery, set time limits for Lisle to do investigation and conduct discovery, and set time limits for Lisle to file his amended petition; those orders did not make any statement about, or have any bearing on, the operation of the statute of limitations. Lisle has not made any factual allegation, or proffered any evidence, suggesting otherwise.

Nevertheless, the Court recognizes that before the Supreme Court decided *Mayle*, there was uncertainty in the law regarding how an amended petition related back to an original petition, with respect to the operation of the statute of limitations. For example, on August 9, 2004, in the *Mayle* case itself, *Felix v. Mayle*, 379 F.3d 612 (9th Cir. 2004), the Ninth Circuit Court of Appeals held that new claims in an amended petition related back to the filing of the original petition and were not time-barred, regardless of whether or not the new claims were related to claims in the original petition. The uncertainty in that regard was not cleared up until June 23, 2005, when the United States Supreme Court ruled, in *Mayle*, that claims in an amended habeas petition do not relate back to the filing of the original petition if they assert new grounds for relief supported by facts that differ in both time and type from those set forth in the original petition. *See Mayle*, 545 U.S. at 650.

In this case, given the skeletal nature of Lisle's original petition, and in light of the uncertainty in the law at the time regarding the relation back of claims in an amended habeas petition to those in an earlier petition, it is not surprising that Lisle's counsel did not file Lisle's amended petition before *Mayle* was decided by the Supreme Court. The Court determines that these were extraordinary circumstances that led Lisle's counsel to delay in filing his amended petition. Under these circumstances, equitable tolling is warranted from the appointment of the FPD on October 15, 2003, to the date of the *Mayle* decision, June 23, 2005.

### 7.    No Equitable Tolling after June 23, 2005

With the benefit of the equitable tolling discussed above, as of June 23, 2005, 38 days had run against the one-year limitations period. Without any further tolling, the limitations period would run out on May 16, 2006.

The Court finds that Lisle does not make any colorable argument that equitable tolling is warranted after June 23, 2005, the date of the *Mayle* decision.

The *Mayle* decision cleared up any uncertainty regarding the relation back of claims in an amended habeas petition to the filing of an earlier petition. The Court finds

meritless Lisle's argument that he was misled by Court orders – Court orders that did not mention the statute of limitations or purport to have any effect on its application – after the Supreme Court's *Mayle* decision, such that he was compelled to continue to delay in filing his amended petition.

The Court also finds meritless Lisle's argument that delays in discovery proceedings, alleged by Lisle to have been caused by the respondents, the Clark County District Attorney's office, and the Las Vegas Metropolitan Police Department, led to the late filing of his amended petition. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 127-29. Nothing prevented Lisle from filing his amended petition before the completion of the discovery. The scheduling orders set a deadline for the filing of the amended petition that was after the completion of discovery, but there was no order that the amended petition could not have been filed sooner. There is no basis shown for equitable tolling after June 23, 2005.

### B.    Exhaustion of State Court Remedies

#### 1.    Legal Standards

A federal court may not grant relief on a habeas corpus claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the State's highest court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212 (1983). To fairly present a federal constitutional claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United States Constitution. *Hiivala v. Wood*, 195 F.3d

1098, 1106 (9th Cir.1999), *cert. denied*, 529 U.S. 1009 (2000), citing *Duncan*, 513 U.S. at 365-66.

### 2. Nevada Supreme Court's Mandatory Review under NRS § 177.055

With respect to certain of his claims – Claims 10A, 10B, 11C, 13A and 13B – Lisle argues that the Nevada Supreme Court addressed those claims, on his direct appeal, as part of its mandatory review under NRS § 177.055. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 95, 147-49. NRS § 177.055 requires the Nevada Supreme Court to consider: whether the evidence supported the finding of the aggravating circumstances; whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and whether the death sentence was excessive. Lisle argues that, by virtue of this provision, the Nevada Supreme Court ruled upon Claims 10A, 10B, 11C, 13A and 13B.

To show that a claim was exhausted on account of the Nevada Supreme Court's mandatory review under NRS § 177.055, Lisle must show that the claims at issue were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer v. Schriro*, 463 F.3d 934, 953-56 (9th Cir. 2006).

The Court determines that Lisle does not show that Claims 10A, 10B, 11C, 13A and 13B were clearly encompassed within the scope of NRS § 177.055, and Lisle does not show them to have been "readily apparent" in the record reviewed by the Nevada Supreme Court. The Court finds that these claims were not exhausted on Lisle's direct appeal by virtue of the Nevada Supreme Court's mandatory review under NRS § 177.055.

### 3. Anticipatory Default

The Supreme Court has recognized that under certain circumstances it is appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now

bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the rulings of the state courts in Lisle's second state habeas action, it is plain that Lisle's unexhausted claims would be ruled procedurally barred in state court if Lisle were to return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies, and the Court considers Lisle's unexhausted claims to be technically exhausted, but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

## C.    Procedural Default

### 1.    Legal Standards

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice,

but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15 (citing *Coleman*, 501 U.S. at 746-47). The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

### 2.      The Procedural Default in this Case

On Lisle's direct appeal and the appeal in his first state habeas action, the Nevada Supreme Court addressed his claims on their merits. *See Lisle*, 113 Nev. 540, 937 P.2d 473 (1997) (opinion on direct appeal); Order of Affirmance, Exhibit 103 (ECF No. 220-12) (opinion on appeal in first state habeas action). Therefore, claims asserted by Lisle on his direct appeal and on the appeal in his first state habeas action were not procedurally barred in state court, and are not subject to the procedural default doctrine in this case.

On Lisle's appeal in his second state habeas action, however, the Nevada Supreme Court ruled that the claims he asserted for the first time in state court in that action were barred by NRS §§ 34.726 (statute of limitations) and 34.810 (successive petitions). *See* Order, Exhibit 169 (ECF No. 222-23). Therefore, claims exhausted by Lisle in state court only in his second state habeas action are subject to the procedural default doctrine.

### 3.    Adequacy of the State Procedural Bars

Lisle argues that the state procedural rules applied to bar his claims in his second state habeas action were not adequate to support application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF No. 298), pp. 154-57, 203-04.

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

Here, the respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court affirmed the dismissal of Lisle's second state habeas action based on independent and adequate state procedural grounds. *See* Motion to Dismiss (ECF No. 216), p. 31; Order, Exhibit 169 (ECF No. 222-23. The Nevada Supreme Court ruled that the claims Lisle asserted for the first time in state court in his second state habeas action were barred by NRS §§ 34.726 (statute of limitations) and 34.810

(successive petitions). *See* Order, Exhibit 169 (ECF No. 222-23). Lisle argues that NRS § 34.726 and 34.810 were inadequate to support application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 190-94.

Regarding NRS § 34.726, the Nevada statute of limitations, the Ninth Circuit Court of Appeals has held that rule to be adequate to support application of the procedural default defense. *See Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000). The Ninth Circuit Court of Appeals has never ruled NRS § 34.726 to be inadequate. The Court finds that Lisle does not show NRS § 34.726 or § 34.800 to be other than clear, consistently applied and well-established. NRS § 34.726 is adequate to support the procedural default defense asserted by respondents.

Regarding NRS § 34.810, Nevada's rule regarding successive petitions, Lisle points out that the Ninth Circuit Court of Appeals has held that rule to be inadequate. *See* Opposition to Motion to Dismiss (ECF No. 232), p. 194; *see also Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015)*; Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008); *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002); *Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001); *McKenna v. McDaniel*, 65 F.3d 1483 (9th Cir. 1995). Respondents have not carried their burden of demonstrating that procedural rule has become adequate since the time of the defaults in those cases. The Court does not apply the procedural default doctrine to Lisle's claims based on the Nevada Supreme Court's reliance on NRS § 34.810 in affirming the dismissal of his second state habeas action.

### 4. Lisle's Argument that He Can Overcome the Procedural Default Defense Because He Is Actually Innocent

Lisle argues that he can overcome the procedural default of his claims by showing his actual innocence, under *McQuiggin* and *Schlup*. *See* Opposition to Motion to Dismiss (ECF No. 232), p. 189. However, as is discussed above, in part III.A.4., the Court determines that Lisle does not meet the standard for a gateway showing of actual innocence, as established in *McQuiggin* and *Schlup*.

28

### D. Claim-Specific Analysis

#### 1. Claim 1

In Claim 1 of his third amended habeas petition, Lisle claims that his conviction and death sentence violate the federal constitution "because, in light of new evidence not presented at trial, it is more likely than not that no reasonable juror, properly instructed, would have found him guilty beyond a reasonable doubt … and/or he can make a truly persuasive demonstration that he is factually innocent of the offense." Third Amended Petition (ECF No. 197), pp. 14-34.

Above, in parts III.A.4. and III.C.4, the Court considers Lisle's claim of actual innocence as a gateway claim, that is, Lisle's contention that he can overcome the statute of limitations and procedural default bars of his claims by a showing of actual innocence. Here, the Court considers respondents' motion to dismiss Lisle's claim of actual innocence as a freestanding claim for habeas corpus relief.

The question whether the claim of actual innocence in Claim 1 is barred by the statute of limitations turns on the determination whether Claim 1 relates back to Lisle's original petition (ECF No. 1), which, by virtue of equitable tolling, was timely filed. In *Mayle*, the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650, 664.

In his original petition, in the portion of the petition in which the grounds for relief are set forth, as Ground 1, Lisle wrote: "See attached pleadings. Exs. 3, 4." Petition for Writ of Habeas Corpus (ECF No. 1), p. 3. Exhibits 3 and 4, attached to the original petition, were Lisle's opening and reply briefs on the appeal in his first state habeas action. Therefore, the Court reads Lisle's original petition to include the claims asserted on the appeal in his first state habeas action.

29

Lisle argues that his original petition should be read to also include the claims he raised on his direct appeal, because he attached to his original petition, as Exhibit 1 to that petition, a copy of the Nevada Supreme Court's opinion on his direct appeal. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 80-81. This argument is without merit. The form that Lisle used to draft his petition called for the petitioner to attach copies of state-court decisions, as part of the background information regarding the petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 1. Nothing from that exhibit was incorporated into the grounds for relief in the petition. *See id.* at 3-8. Moreover, in his original petition, Lisle specifically stated that the claims asserted in that petition were exhausted in state court in his first state habeas action, and not on his direct appeal. *See id.* at 3-4. Lisle's original petition cannot be read to assert the claims that he asserted on his direct appeal to the Nevada Supreme Court.

Applying *Mayle*, then, the Court determines that Claim 1 does not relate back to Lisle's original petition. There is no claim in Lisle's original petition that asserts that any newly discovered evidence shows Lisle to be innocent, or that involves the core facts of Claim 1.

Moreover, Lisle does not make any argument, under 28 U.S.C. § 2244(d)(1)(D), that the limitations period should run from a later date with respect to Claim 1. Lisle does not specify when exactly he claims to have discovered the new evidence showing his innocence.

As Claim 1 does not relate back to Lisle's original petition, it is barred by the statute of limitations, and it will be dismissed on that ground.

Furthermore, as Claim 1 was not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, the claim is also barred by the procedural default doctrine.

Claim 1 will be dismissed on statute of limitations and procedural default grounds.

### 2. Claim 2

In Claim 2 of his third amended habeas petition, Lisle claims that his conviction and death sentence violate the federal constitution "because prosecutorial misconduct and the State's failure to disclose material exculpatory and impeachment evidence deprived Mr. Lisle of fundamentally fair proceedings." Third Amended Petition (ECF No. 197), pp. 35. Claim 2 includes several subparts. In Claim 2A1, Lisle claims: "The State failed to disclose exculpatory and impeachment materials regarding John Melcher." *Id.* at 36-44. In Claim 2A2, Lisle claims: "The State failed to disclose impeachment materials regarding Larry Prince." *Id.* at 44-49. In Claim 2A3, Lisle claims: "The State failed to disclose impeachment evidence regarding Adam Evans." *Id.* at 49-50. In Claim 2A4, Lisle claims: "The State failed to disclose the existence of cash payments to its witnesses." *Id.* at 50-53. In Claim 2A5, Lisle claims: "The prosecutor misled trial counsel by claiming that his office maintained an open file policy." *Id.* at 54-56. In Claim 2B1, Lisle claims: "The State made improper comments and argument during its opening statement." *Id.* at 57-58. In Claim 2B2a, Lisle claims that the State committed misconduct during its closing argument because "[t]he State improperly aligned itself with the jury." *Id.* at 58-59. In Claim 2B2b, Lisle claims that the State committed misconduct during its closing argument because "[t]he State improperly vouched for the credibility of Mr. Evans and Mr. Melcher." *Id.* at 59-62. And, in Claim 2B2c, Lisle claims that the State committed misconduct during its closing argument because the State "[i]mproperly comment[ed] upon the lack of mitigating evidence and the role of mitigating circumstances." *Id.* at 62-63.

Respondents concede that Claims 2B2a and 2B2b relate back to Lisle's original petition. *See* Motion to Dismiss (ECF No. 216), p. 8. Those claims are not barred by the statute of limitations. Beyond those two claims, however, the Court determines that the remainder of Claim 2 does not relate back to Lisle's original petition, and is barred by the statute of limitations.

Lisle argues that certain parts of Claim 2 relate back to his original petition, because he raised those claims on his direct appeal to the Nevada Supreme Court and

the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 80-87. However, as is discussed above, in part III.D.1., with respect to Claim 1, the Court determines that Lisle's mere attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. None of the claims in Claim 2 relate back to Lisle's original petition by virtue of his having asserted them on his direct appeal.

Turning to the issue of procedural default, Claims 2A1, 2A2, 2A3, 2A4 and 2A5 are claims that the prosecution failed to disclose certain exculpatory and impeachment information. Lisle appears to argue that he can show cause and prejudice to overcome the procedural default of those claims, because the State withheld material relative to the claims; in light of this assertion by Lisle, which is intertwined with the merits of the claims, the Court does not consider the question of the procedural default of those claims in this order.

Regarding Claim 2B1, Lisle asserted such a claim on his direct appeal. *See* Appellant's Amended Opening Brief, Exhibit 70, pp. 57-64 (ECF No. 219-9, pp. 71-78). Claim 2B1 is not procedurally defaulted.

Lisle asserted Claims 2B2a and 2B2b on the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exhibit 99 (ECF No. 22-8), pp. 29-33. Those claims are not procedurally defaulted.

Lisle does not show that Claim 2B2c was raised on direct appeal or on the appeal in his first state habeas action. That claim is procedurally defaulted, and Lisle makes no argument, specific to Claim 2B2c, that he can overcome the procedural default of that claim. Claim 2B2c is barred by the procedural default doctrine.

Therefore, Claims 2A1, 2A2, 2A3, 2A4, 2A5 and 2B1 will be dismissed on statute of limitations grounds. Claim 2B2c will be dismissed on both statute of limitations and procedural default grounds. The motion to dismiss will be denied with respect to Grounds 2B2a and 2B2b.

### 3.    Claim 3

In Claim 3, Lisle contends that his conviction and death sentence violate the federal constitution "because the State committed prosecutorial misconduct in presenting testimony that improperly bolstered its witnesses; the trial court erred in failing to strike that testimony; and trial counsel provided ineffective assistance in failing to object to that testimony, move to strike that testimony, and move for a mistrial following the jury's exposure to that testimony." Third Amended Petition (ECF No. 197), pp. 65-77.

No claim involving the core facts underlying Claim 3 was asserted in Lisle's original petition in this case, so Claim 3 does not relate back to that petition, and is barred by the statute of limitations.

Lisle argues that Claim 3 relates back to his original petition, because he raised similar claims on his direct appeal to the Nevada Supreme Court and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 87-88. As is discussed above, in part III.D.1., however, the Court determines that Lisle's mere attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. Claim 3 does not relate back to Lisle's original petition by virtue of his having asserted similar claims on his direct appeal.

Regarding the issue of procedural default, Lisle did assert claims similar to those in Claim 3 on his direct appeal. And, further, with regard to the claims of ineffective assistance of trial counsel in Claim 3, Lisle could possibly show cause and prejudice to overcome any procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not consider the issue of the procedural default of Claim 3 in this order.

Claim 3 is dismissed on statute of limitations grounds.

### 4. Claim 4

In Claim 4, Lisle contends that his conviction and death sentence violate the federal constitution "because the prosecutor prevented the defense from speaking with John Melcher and the trial court did not afford petitioner a hearing on his allegations." Third Amended Petition (ECF No. 197), pp. 78-82.

In his original petition in this case, Lisle asserted no claim involving the core facts underlying Claim 4. Therefore, Claim 4 does not relate back to his original petition, and it is barred by the statute of limitations.

Here again, Lisle argues that Claim 4 relates back to his original petition, because he raised a similar claim on his direct appeal to the Nevada Supreme Court and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. *See* Opposition to Motion to Dismiss (ECF No. 232), p. 88. As is discussed above, in part III.D.1., however, the Court determines that Lisle's mere attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. Claim 4 does not relate back to Lisle's original petition by virtue of his having asserted similar claims on his direct appeal.

Regarding procedural default, Lisle did assert a claim similar to Claim 4 on his direct appeal. And, further, with regard to the claims of ineffective assistance of trial counsel in Claim 4, Lisle could possibly show cause and prejudice to overcome any procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claim, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not consider the issue of the procedural default of Claim 4 in this order.

Claim 4 is dismissed on statute of limitations grounds.

### 5. Claim 5

In Claim 5, Lisle claims that his conviction and death sentence violate the federal constitution "because Mr. Lisle's attorneys were constitutionally ineffective at all stages

of his state-court proceedings." Third Amended Petition (ECF No. 197), p. 83. Claim 5 includes several subparts. In Claim 5A, Lisle claims: "Trial counsel were ineffective for failing to present available mitigating evidence at the penalty phase." *Id.* at 83-129. In Claim 5B1, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial, because of their "[f]ailure to investigate and present evidence of actual innocence of first-degree murder." *Id.* at 129-32. In Claim 5B2, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial, because of their "[i]neffective litigation of gang allegations in the guilt phase." *Id.* at 132-42. In Claim 5B3, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial, because of their "[i]neffective cross-examination of Larry Prince." *Id.* at 142-55. In Claim 5B4, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial, because of their "[i]neffective cross-examination of John Melcher." *Id.* at 155-57. In Claim 5B5, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial, because of "[t]he institutional lack of resources at the office of the Clark County Public Defender." *Id.* at 158-59. In Claim 5C, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial because they "failed to object to prosecutorial misconduct." *Id.* at 159-60. And, in Claim 5D, Lisle claims that his trial counsel were ineffective in the guilt phase of his trial because they "failed to object to erroneous jury instructions and failed to request necessary jury instructions." *Id.* at 160-61.

Claim 5C relates back to Lisle's original petition to the extent that Lisle claims his trial counsel was ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b, as that prosecutorial misconduct was alleged on appeal in Lisle's first state habeas action, and Lisle's opening brief from that appeal was incorporated into his original petition in this case. Beyond that, however, none of the rest of Claim 5 relates back to Lisle's original petition, and, therefore, the remainder of Claim 5 is barred by the statute of limitations.

Again, Lisle argues that parts of Claim 5 relate back to his original petition, because he raised similar claims on his direct appeal to the Nevada Supreme Court and the

Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 88-91. As is discussed above, in part III.D.1., however, the Court determines that Lisle's mere attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. None of Claim 5 relates back to Lisle's original petition by virtue of his having asserted similar claims on his direct appeal.

Because Lisle raised, on the appeal in his first state habeas action, the claims that his trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b, those claims, in Claim 5C, are not procedurally defaulted.

The remainder of Claim 5 – beyond the claims, in Claim 5C, that Lisle's trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b – was not asserted on either Lisle's direct appeal or the appeal in his first state habeas action, and is, therefore, potentially barred by the procedural default doctrine. However, as these are all claims of ineffective assistance of trial counsel, Lisle could possibly show cause and prejudice to overcome any procedural default of them, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not consider the issue of the procedural default of the Claim 5 beyond the claims, in Claim 5C, that Lisle's trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b.

All of Claim 5, except the claims, in Claim 5C, that Lisle's trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b, will be dismissed on statute of limitations grounds. The motion to dismiss will be denied with respect to the claims, in Claim 5C, that Lisle's trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b.

### 6. Claim 6

In Claim 6, Lisle contends that his conviction and death sentence violate the federal constitution "due to the invalid instructions defining first-degree murder which removed the distinguishing elements of the offense from the jury's consideration and rendered the instructions unconstitutionally vague." Third Amended Petition (ECF No. 197), pp. 163-73.

Lisle did not, in his original petition, assert any claim involving the core facts underlying Claim 6. Therefore, Claim 6 does not relate back to his original petition, and it is barred by the statute of limitations.

Also, Lisle did not assert a claim like that in Claim 6 on either his direct appeal or the appeal in his first state habeas action; therefore, Claim 6 is barred by the doctrine of procedural default. Lisle makes no argument, specific to Claim 6, that he can overcome the procedural default of this claim.

Claim 6 will be dismissed on both statute of limitations and procedural default grounds.

### 7. Claim 7

In Claim 7, Lisle claims that his death sentence violates the federal constitution "because the knowing risk of death aggravating circumstance has been unconstitutionally applied to Mr. Lisle's case." Third Amended Petition (ECF No. 197), pp. 174-80.

This claim relates back to Lisle's original petition, and is not barred by the statute of limitations, because Lisle asserted a claim, involving the same core of operative facts, on the appeal in his first state habeas action, and he incorporated into his original petition in this case his opening brief on that appeal. *See* Appellant's Opening Brief, Exhibit 99, pp. 36-44 (ECF No. 220-8, pp. 43-51).

And, because Lisle raised this claim on the appeal in his first state habeas action, and also on his direct appeal (*see* Appellant's Amended Opening Brief, Exhibit 70, pp. 73-79 (ECF No. 219-9, pp. 87-93)), it is not procedurally defaulted.

Respondents' motion to dismiss will be denied with respect to Claim 7.

### 8.  Claim 8

In Claim 8, Lisle claims that his conviction and death sentence violate the federal constitution "because cumulative errors in Mr. Lisle's proceedings deprived him of fundamental fairness throughout the proceedings." Third Amended Petition (ECF No. 197), pp. 181-82.

Claim 8 is a cumulative error claim. Claim 8 is procedurally viable to the extent that there are other claims in Lisle's petition that remain procedurally viable. The motion to dismiss will be denied with respect to Claim 8.

### 9.  Claim 9

In Claim 9, Lisle claims that his conviction and death sentence violate the federal constitution "due to direct appeal counsel's failure to provide reasonably effective assistance." Third Amended Petition (ECF No. 197), pp. 183-87. The Court reads this as a claim that Lisle's counsel on his direct appeal was ineffective for failing to assert the claims raised in Lisle's third amended petition in this case, and for failing to effectively argue those claims that were asserted on direct appeal.

Therefore, Claim 9 relates back to Lisle's original petition in this case to the same extent that his other claims do. Claim 9, then, is not barred by the statute of limitations to the extent of Lisle's claims that his appellate counsel was ineffective with respect to: Claim 2B2a; Claim 2B2b; the claims in Claim 5C that trial counsel was ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b; Claim 7; Claim 8; and Claim 10A. The remainder of Claim 9 does not relate back to Lisle's original petition, and is barred by the statute of limitations.

With respect to the question of procedural default, none of the claims in Claim 9 were raised on the appeal in Lisle's first state habeas action, and, of course, they could not have been raised on Lisle's direct appeal as it is that proceeding in which Lisle claims he received ineffective assistance of counsel. Therefore, all of Claim 9 is subject to dismissal based on procedural default. Lisle makes no argument, specific to Claim 9, that he can overcome the procedural default of this claim.

Therefore, the Court dismisses on procedural default grounds the claims in Claim 9 that Lisle's appellate counsel was ineffective with respect to: Claim 2B2a; Claim 2B2b; the claims in Claim 5C that trial counsel was ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b; Claim 7; Claim 8; and Claim 10A. The remainder of Claim 9 is dismissed on both statute of limitations grounds and procedural default grounds.

### 10. Claim 10

In Claim 10, Lisle claims that his conviction and death sentence violate the federal constitution "because the trial court committed numerous substantial and injurious errors during the guilt- and penalty-phase proceedings." Third Amended Petition (ECF No. 197), p. 188. Claim 10 has four subparts. In Claim 10A, Lisle claims: "The trial court erroneously allowed the State to present prejudicial evidence of an unadjudicated homicide." *Id.* at 188-90. In Claim 10B, Lisle claims: "The trial court erroneously admitted hearsay evidence in violation of Lisle's confrontation rights." *Id.* at 190-95. In Claim 10C, Lisle claims: "The trial court erred by failing to continue Mr. Lisle's arraignment despite the fact that he had not been given a timely copy of the grand jury proceedings." *Id.* at 195-96. In Claim 10D, Lisle claims: "The State failed to provide Mr. Lisle with adequate notice of the grand jury proceedings." *Id.* at 197-201.

Lisle asserted a claim similar to Claim 10A on the appeal in his first state habeas action (*see* Appellant's Opening Brief, Exhibit 99, pp. 44-47 (ECF No. 220-8, pp. 51-54)), which was incorporated into Lisle's original petition in this case. Therefore, Claim 10A relates back to his original petition and is not barred by the statute of limitations. And, as that claim was raised on Lisle's appeal in his first state habeas action, as well as on his direct appeal (*see* Appellant's Amended Opening Brief, Exhibit 70, pp. 83-88 (ECF No. 219-9, pp. 97-102)), it is not procedurally defaulted.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as Claim 10B. Claim 10B is barred by the statute of limitations. With regard to the questions of exhaustion and procedural default of Claim 10B, Lisle argues that the

Nevada Supreme Court necessarily considered this claim as part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 147-49. As is discussed above, in part III.B.2, the Court finds that Lisle has not shown that this claim was "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56. Claim 10B is barred by the doctrine of procedural default.

Lisle did not assert, in his original petition, any claim involving the same core of operative facts as Claim 10C or 10D. Claims 10C and 10D are barred by the statute of limitations. Lisle did raise claims similar to Claims 10C and 10D on his direct appeal. *See* Appellant's Amended Opening Brief, Exhibit 70 (ECF No. 219-9). Claims 10C and 10D are not procedurally defaulted.

Therefore, Claim 10B will be dismissed on statute of limitations and procedural default grounds, and Claims 10C and 10D will be dismissed on statute of limitations grounds. The motion to dismiss will be denied with respect to Claim 10A.

### 11. Claim 11

In Claim 11, Lisle claims that his conviction and death sentence violate the federal constitution "because the trial court erroneously instructed the jury in the guilt- and penalty-phase proceedings." Third Amended Petition (ECF No. 197), p. 202. Claim 11 includes several subparts. In Claim 11A, Lisle claims his constitutional rights were denied because of "[t]he reasonable doubt instruction." *Id.* at 202-04. In Claim 11B1, Lisle claims that his constitutional rights were denied in the guilt phase of his trial because of "[t]he premeditation and deliberation instruction." *Id.* at 204. In Claim 11B2, Lisle claims that his constitutional rights were denied in the guilt phase of his trial because of "[t]he malice instructions." *Id.* at 204-07. In Claim 11C1, Lisle claims that his constitutional rights were denied in the penalty phase of his trial because of "[t]he anti-sympathy instruction." *Id.* at 207-08. In Claim 11C2, Lisle claims that his constitutional rights were denied in the penalty phase of his trial because of "[t]he limited use of prior bad act evidence and failure

to instruct the jury that the other murder offense had to be found beyond a reasonable doubt." *Id.* at 208-12. And, in Claim 11C3, Lisle claims that his constitutional rights were denied in the penalty phase of his trial because of "[t]he failure to require that mitigation evidence must be outweighed by statutory aggravating circumstances beyond a reasonable doubt." *Id.* at 212-13.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as any of Claims 11A, 11B1, 11B2, 11C1, 11C2 or 11C3; those claims are barred by the statute of limitations. And, because Lisle did not assert any of these claims on his direct appeal, or on the appeal in his first state habeas action, they are also barred by the procedural default doctrine.

Lisle argues that the Nevada Supreme Court necessarily considered the claims in Claims 11C1, 11C2 and 11C3 as part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. *See* Opposition to Motion to Dismiss (ECF No. 232), pp. 147-49. As is discussed above, in part III.B.2, the Court finds that Lisle has not shown that these claim were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56.

All of Claim 11 will be dismissed on statute of limitations and procedural default grounds.

### 12. Claim 12

In Claim 12, Lisle claims that his conviction and death sentence violate the federal constitution "because systemic errors in jury selection infected the voir dire proceedings." Third Amended Petition (ECF No. 197), p. 214. Claim 12 includes several subparts. In Claim 12A, Lisle claims: "The State used peremptory challenges in a racially discriminatory manner." *Id.* at 215-21. In Claim 12B, Lisle claims: "The trial court failed to remove for cause biased jurors Koch, Mode, and Chandler from the venire." *Id.* at 221-22. In Claim C, Lisle claims: "The trial court improperly limited the voir dire proceedings." *Id.* at 223-25. In Claim 12D, Lisle claims: "The trial court erred by limiting voir dire to

41

questions not contained in the written questionnaires in order to rush the voir dire proceedings." *Id.* at 225-27. In Claim 12E, Lisle claims: "The trial court erred in conducting voir dire on the unconstitutional theory that a prospective juror had to be able to 'equally consider' death as a punishment." *Id.* at 227-29. In Claim 12F, Lisle claims: "The trial court failed to record critical parts of voir dire." *Id.* at 230-31. In Claim 12G, Lisle claims: "Mr. Lisle was deprived of the effective assistance of counsel during the voir dire proceedings." *Id.* at 231-32. Claim 12G includes five subparts. In Claim 12G1, Lisle claims that his "'[t]rial counsel failed to rehabilitate death-scrupled jurors." *Id.* at 232-35. In Claim 12G2, Lisle claims that his "[t]rial counsel failed to object for cause to biased jurors." *Id.* at 235-38. In Claim 12G3, Lisle claims that his "[t]rial counsel were ineffective for using peremptory strikes to remove biased jurors who should have been challenged for cause." *Id.* at 238-40. In Claim 12G4, Lisle claims that his "[t]rial counsel ineffectively litigated the *Batson* issue." *Id.* at 240-41. And, in Claim 12G5, Lisle claims that his "[t]rial counsel were ineffective in failing to object to the misleading voir dire and question on the questionnaire regarding 'equal consideration" of the death penalty." *Id.* at 241.

Lisle did not assert, in his original petition, any claim regarding voir dire. None of Claim 12 relates back to the original petition. All of Claim 12 is barred by the statute of limitations.

Nor did Lisle assert any claim regarding voir dire on either his direct appeal or the appeal in his first state habeas action. Therefore, all of Claim 12 is potentially subject to dismissal pursuant to the procedural default doctrine.

With respect to Claims 12A, 12B, 12C, 12D, 12E, 12F, Lisle makes no argument, specific to any of those claims, that he can overcome the procedural default.

Claims 12G1, 12G2, 12G3, 12G4 and 12G5 are claims of ineffective assistance of trial counsel. Lisle could possibly show cause and prejudice to overcome the procedural default of these claims, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this order, consider the question of the procedural

default of the claims of ineffective assistance of trial counsel in Claims 12G1, 12G2, 12G3, 12G4 and 12G5.

Claims 12A, 12B, 12C, 12D, 12E and 12F will be dismissed on statute of limitations and procedural default grounds. Claims 12G1, 12G2, 12G3, 12G4 and 12G5 will be dismissed on statute of limitations grounds.

### 13. Claim 13

In Claim 13, Lisle claims that his conviction and death sentence violate the federal constitution "due to the failure of the Nevada Supreme Court to conduct fair and adequate appellate review." Third Amended Petition (ECF No. 197), p. 243. Claim 13 includes two subparts. In Claim 13A, Lisle claims: "The Nevada Supreme Court's mandatory review of death sentences for arbitrariness is itself arbitrary and capricious." *Id.* at 243-46. In Claim 13B, Lisle claims: "The Nevada Supreme Court's appellate review in Lisle's case was arbitrary and capricious." *Id.* at 246-50.

Lisle did not assert, in his original petition, any claim involving the same core of operative facts as Claim 13A or 13B; those claims are barred by the statute of limitations. And, because Lisle did not assert any of these claims on his direct appeal, or on the appeal in his first state habeas action, they are also barred by the procedural default doctrine.

Lisle argues that the Nevada Supreme Court necessarily considered the claims in Claims 13A and 13B as part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. *See* Opposition to Motion to Dismiss (ECF No. 232), p. 95. As is discussed above, in part III.B.2, the Court finds that Lisle has not shown that these claim were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56.

All of Claim 13 will be dismissed on statute of limitations and procedural default grounds.

### 14. Claim 14

In Claim 14, Lisle claims that his conviction and death sentence violate the federal constitution "because severe mental illness rendered [him] incompetent to stand trial." Third Amended Petition (ECF No. 197), p. 251-60.

Lisle did not assert, in his original petition, any claim involving the same core of operative facts as Claim 14; Claim 14 is barred by the statute of limitations.

And, because Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 14 is also subject to the procedural default doctrine. However, regarding the claims of ineffective assistance of trial counsel in Claim 14, Lisle could possibly show cause and prejudice to overcome the procedural default of those claims, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 14.

The claims of ineffective assistance of trial counsel in Claim 14 will be dismissed on statute of limitations grounds. The remainder of Claim 14 will be dismissed on both statute of limitations grounds and procedural default grounds.

### 15. Claim 15

In Claim 15, Lisle claims that his conviction and death sentence violate the federal constitution "because he may become incompetent to be executed." Third Amended Petition (ECF No. 197), p. 261.

There is a question whether this claim is ripe. The Court will deny respondents' motion to dismiss Claim 25, and will leave the question of the ripeness of Claim 15, and any other issues concerning the claim, to be determined after respondents file an answer and petitioner files a reply.

### 16. Claim 16

In Claim 16, Lisle claims that his conviction and death sentence violate the federal constitution "because severe mental and physical illness rendered him incompetent"

44

during his proceedings, and "Lisle's maltreatment while incarcerated results in his execution being unconstitutional." Third Amended Petition (ECF No. 197), p. 262-84.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as Claim 16; Claim 16 is barred by the statute of limitations. And, because Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 16 is also barred by the procedural default doctrine.

Claim 16 will be dismissed on statute of limitations and procedural default grounds.

### 17. Claim 17

In Claim 17, Lisle claims that his conviction and death sentence violate the federal constitution "because Mr. Lisle was forced to wear a stun belt and shackles during the guilt and penalty phases of his trial." Third Amended Petition (ECF No. 197), p. 285-87.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as Claim 17; Claim 17 is barred by the statute of limitations. And, because Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 17 is also barred by the procedural default doctrine.

Claim 17 will be dismissed on statute of limitations and procedural default grounds.

### 18. Claim 18

In Claim 18, Lisle claims that his federal constitutional rights were violated "because Mr. Lisle's capital trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election." Third Amended Petition (ECF No. 197), p. 288. Claim 18 includes two subparts. In Claim 18A, Lisle claims: "The system of electing judges in the State of Nevada carries an unconstitutional risk of bias. *Id.* at 288-96. And, in Claim 18B, he claims: "The actions of the trial court in Lisle's case demonstrate an unconstitutional risk of judicial bias." *Id.* at 296-300.

Lisle did not assert, in his original petition, any claim involving the same core of operative facts as Claim 18; Claim 18 is barred by the statute of limitations. And, because

Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 18 is also barred by the procedural default doctrine.

Claim 18 will be dismissed on statute of limitations and procedural default grounds.

**19.    Claim 19**

In Claim 19, Lisle claims that his federal constitutional rights were violated "because Mr. Lisle's attorneys failed to object to the admission of evidence during the penalty phase of his trial which recounted events that did not result in a criminal conviction and that occurred before Mr. Lisle reached the age of eighteen." Third Amended Petition (ECF No. 197), pp. 301-04.

Lisle did not assert, in his original petition, any claim involving the same core of operative facts as Claim 19; Claim 19 is barred by the statute of limitations. And, because Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 19 is also barred by the procedural default doctrine.

Claim 19 will be dismissed on statute of limitations and procedural default grounds.

**20.    Claim 20**

In Claim 20, Lisle claims that his death sentence is invalid under the federal constitution "because the Nevada capital punishment system operates in an arbitrary and capricious manner." Third Amended Petition (ECF No. 197), pp. 305-08.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as Claim 20; Claim 20 is barred by the statute of limitations. And, because Lisle did not assert any such claim on his direct appeal, or on the appeal in his first state habeas action, Claim 20 is also barred by the procedural default doctrine.

Claim 20 will be dismissed on statute of limitations and procedural default grounds.

**21.    Claim 21**

In Claim 21, Lisle claims that his death sentence is invalid under the federal constitution "because his execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments and his rights under the First and Fourteenth Amendments." Third Amended Petition (ECF No. 197), p. 309. Claim 21

46

includes two subparts. In Claim 21A, Lisle claims: "Lethal injection is unconstitutional in all circumstances." *Id.* at 309-18. In Claim 21B, Lisle claims: "Lethal injection in Nevada is unconstitutional." *Id.* at 318-28.

Lisle did not, in his original petition, assert any claim involving the same core of operative facts as Claim 21A. Claim 21A does not relate back to Lisle's original petition, and is barred by the statute of limitations. Also, as Claim 21A was not raised on either Lisle's direct appeal or the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted. Lisle does not make any argument specific to Claim 21A, that he can overcome the procedural default of that claim. Claim 21A will be dismissed on statute of limitations and procedural default grounds.

With respect to Claim 21B, there is a question whether the claim is ripe, and subject to adjudication in this habeas action, as it is unclear whether the State has established the protocol by which Lisle's execution would be conducted. The Court will deny respondents' motion to dismiss Claim, and will leave the question of the ripeness of Claim 21B, and any other issues concerning the claim, to be determined after respondents file an answer and petitioner files a reply.

### E. Lisle's Motion for Leave to Conduct Discovery and Motion for Orders for Medical Examination and Site Inspection

Lisle filed, with his opposition to the motion to dismiss, a motion for leave to conduct discovery (ECF No. 236), and a motion for orders for medical examination and site inspection (ECF No. 241). Respondents filed oppositions to those motions (ECF Nos. 255, 256), and Lisle filed replies (ECF Nos. 314, 315).

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). However, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing § 2254 Cases. There is good cause for discovery "where specific allegations before the court show reason to believe that the

petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The ultimate question whether discovery is justified is within the discretion of the Court. *Id.*

In his motion for discovery, Lisle first requests leave of court to conduct discovery in support of his claim that he is actually innocent. *See* Motion for Leave to Conduct Discovery (ECF No. 236), pp. 5-7. The Court determines that this discovery is unnecessary to the resolution of the motion to dismiss. Lisle makes no showing the information he seeks could show his factual innocence, as required to meet the standard for an actual innocence gateway claim under *McQuiggin* and *Schlup. See* part III.A.4., above.

Next, in his motion for discovery, and also in his motion for medical examination and site inspection, Lisle requests discovery concerning his physical and mental condition, and the conditions of his confinement, from September 17, 2002, the date on which his first state habeas action was completed, to August 20, 2003, the date on which his original petition in this case was filed, in order to show that he is entitled to equitable tolling during that time period. *See* Motion for Leave to Conduct Discovery (ECF No. 236), pp. 7-20; Motion for Orders for Medical Examination and Site Inspection (ECF No. 241). The Court determines that this discovery, as well, is unnecessary to the resolution of the motion to dismiss. Without need for further factual development, the Court grants Lisle equitable tolling from September 17, 2002, to June 23, 2005, the date of the Supreme Court's *Mayle* decision. *See* parts III.A.5. and III.A.6., above.

Therefore, the Court will deny Lisle's motion for discovery (ECF No. 236), and his motion for medical examination and site inspection (ECF No. 241). The denial of these motions is without prejudice to Lisle seeking discovery relative to the merits of his remaining claims, as contemplated in the scheduling order entered on June 22, 2016 (ECF No. 191).

### F.     Lisle's Motion for Evidentiary Hearing

Lisle also filed, with his opposition to the motion to dismiss, a motion for evidentiary hearing (ECF No. 239). Respondents filed an opposition to that motion (ECF No. 254), and Lisle filed a reply (ECF No. 259).

Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Moreover, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see also Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Lisle first requests an evidentiary hearing "to demonstrate that [he] is actually innocent of the offense." *See* Motion for Evidentiary Hearing (ECF No. 239), pp. 4-5. As is discussed above, the Court determines that Lisle does not make a showing that further factual development could lead to the sort of showing of factual innocence contemplated by *McQuiggin* and *Schlup*. *See* parts III.A.4. and III.C.4, above.

Next, Lisle requests an evidentiary hearing "to demonstrate that [he] has suffered prejudice from the delayed focus on the statute of limitations." *See* Motion for Evidentiary Hearing (ECF No. 239), pp. 5-7. This request relates to Lisle's contention that "the State waived its right to assert a statute of limitations defense against his initial federal petition because it failed to raise that issue in the motion to dismiss that it filed on October 4, 2004." *See id.*; *see also* part III.A.3., above. However, the Court declines to rule on the waiver argument because, as a result of equitable tolling, Lisle's original petition was timely filed. *See* part III.A.3., above.

Lisle also requests an evidentiary hearing to show that he is entitled to equitable tolling during 2002 and 2003. *See* Motion for Evidentiary Hearing (ECF No. 239), pp. 7-18. As with Lisle's request for discovery for this purpose (*see* part III.E., above), the Court finds that further factual development in this regard is unnecessary. Without need for further factual development, the Court grants Lisle equitable tolling from September 17, 2002, to June 23, 2005, the date of the Supreme Court's *Mayle* decision. *See* parts III.A.5. and III.A.6., above.

Finally, Lisle requests an evidentiary hearing to show that he can overcome the procedural default of his claims of ineffective assistance of trial counsel, under *Martinez*. *See* Motion for Evidentiary Hearing (ECF No. 239), pp. 18-19. Here too, further factual development is unnecessary to resolve the motion to dismiss. The Court denies the motion to dismiss Lisle's claims of ineffective assistance of trial counsel on procedural default grounds, determining that the question whether Lisle can overcome the procedural default, under *Martinez*, is intertwined with the merits of the claims, such that the question of the procedural default will be better addressed along with the merits of the claims.

Therefore, the Court will deny Lisle's motion for evidentiary hearing (ECF No. 239). The denial of this motion is without prejudice to Lisle seeking an evidentiary hearing relative to the merits of his remaining claims, as contemplated in the scheduling order entered on June 22, 2016 (ECF No. 191).

///

///

///

///

///

///

///

///

///

## IV. Conclusion

**IT IS THEREFORE HEREBY ORDERED** that respondents' Motion to Dismiss (ECF No. 216) is **GRANTED IN PART AND DENIED IN PART**. All the claims in the petitioner's third amended habeas petition are dismissed except the following:

- Claim 2B2a;

- Claim 2B2b;

- the claims in Claim 5C that trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b;

- Claim 7;

- Claim 8;

- Claim 10A;

- Claim 15; and

- Claim 21B.

In all other respects, the motion to dismiss is denied.

**IT IS FURTHER ORDERED** that petitioner's Motion for Leave to Conduct Discovery (ECF No. 236) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's Motion for Evidentiary Hearing (ECF No. 239) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's Motion for Orders for Medical Examination and Site Inspection (ECF No. 241) is **DENIED**.

**IT IS FURTHER ORDERED** that respondents shall, within 90 days from the date of this order, file an answer, responding to the remaining claims in petitioner's third amended habeas petition, which are the following:

- Claim 2B2a;

- Claim 2B2b;

- the claims in Claim 5C that trial counsel were ineffective for failing to object to the prosecutorial misconduct alleged in Claims 2B2a and 2B2b;

- Claim 7;

1          -          Claim 8;

2          -          Claim 10A;

3          -          Claim 15; and

4          -          Claim 21B.

5     In all other respects, the schedule for further proceedings set forth in the order entered

6     June 22, 2016 (ECF No. 191) remains in effect.

7

8          DATED July 2, 2018.

9

10

_____

11     JAMES C. MAHAN,
       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28